

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Robert W. Gettleman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 2160 | **DATE** | July 29, 2002 |
| **CASE TITLE** | Carl Quanstrom, et al  v  Eileen Kirkwood, et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]

## Memorandum opinion and order entered. Accordingly, defendants' motion to dismiss is granted.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | Document Number |
| X | Notices mailed by judge's staff. | | JUL 31 2002 date docketed | |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | | 7 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | U.S. DISTRICT COURT CLERK 02 JUL 30 PM 1:12 | | |
| GDS | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOCKETED
JUL 3 1 2002

| | |
|---|---|
| CARL QUANSTROM and MYRENE QUANSTROM, ) ) ) Plaintiffs, ) ) ) v. ) ) EILEEN KIRKWOOD, MONEE ASSOCIATES, ) LLC and INVESTMENT LAND ACQUISITIONS, ) INC., ) ) Defendant. ) | No.   02 C 2160<br><br>Judge Robert W. Gettleman |

## MEMORANDUM OPINION AND ORDER

Plaintiffs, Carl Quanstrom and Myrene Quanstrom, have filed a suit against defendants, Eileen Kirkwood and her companies, Investment Land Acquisitions, Inc. ("ILA") and Monee Associates, LLC ("MA"), pursuant to 18 U.S.C. § 1962(c), the federal Racketeering Influenced and Corrupt Organizations Act ("RICO"). Defendants have moved to dismiss plaintiffs' complaint as time-barred, and as failing to state a claim upon which relief can be granted pursuant to Fed.R.Civ.P. 12(b)(6). For the reasons stated below, the motion is granted.

## LEGAL STANDARD

In ruling on a motion to dismiss for failure to state a claim, the court considers "whether relief is possible under any set of facts that could be established consistent with the allegations." Bartholet v. Reishauer A.G., 953 F.2d 1073, 1078 (7th Cir. 1992); Conley v. Gibson, 355 U.S. 41, 45-46 (1957). The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to rule on its merits. See Gibson v. City of Chicago, 910 F.2d 1510, 1520 (7th Cir. 1990).

When considering the motion, the court accepts the allegations of the complaint as true and views the facts in the light most favorable to plaintiffs. Travel All Over the World, Inc v. Kingdom of Saudi Arabia, 73 F.3d 1423, 1428 (7th Cir. 1996).

## BACKGROUND

Plaintiffs are owners of property in Will County, Illinois adjacent to the Village of Monee. Sometime prior to 1995, defendants entered into a contract with plaintiffs to purchase 113 acres of plaintiffs' land ("the main parcel"). Defendants later also entered into an option to purchase an additional 195 acres of plaintiffs' land ("the option parcel") at or before the closing of the sale of the main parcel. The option agreement was drafted on May 19, 1995, and was included as an amendment to the contract for the main parcel thereafter.

Under the contract, defendants were to deposit $50,000 into a pre-development fund that would help subsidize the development of the property. Defendants also agreed to pay plaintiffs $50,000 in earnest money. If defendants failed to purchase at least the main parcel by December 19,1998, the closing date, the contract provided that plaintiffs could retain the earnest payment.

After the execution of the contract, defendant Kirkwood began working toward developing a shopping center on plaintiffs' land. Specifically and most notably, defendant Kirkwood approached the Mills Corporation ("Mills") about building an "outlet mall" on plaintiffs' land. Defendants deposited the pre-development funds and the earnest money as scheduled by the contract. Thereafter, defendants sent various letters to plaintiffs updating them on the progress of the sale and development of plaintiffs' land. Kirkwood's efforts to bring Mills in to develop plaintiffs' property were ultimately unsuccessful and, as set forth below, the relationship between the parties soured as a result.

2

In May 1997, plaintiffs and the other owner of plaintiffs' property, Monee Nursery and Landscaping Co., filed a lawsuit against ILA and MA in the Circuit Court of Will County, seeking a declaratory judgment that the contract was null and void because defendants did not have the funds to, and had failed to, perform under the contract. Defendants filed a separate suit seeking specific performance and damages. On September 8, 1998, the circuit court ruled that plaintiffs' suit constituted an anticipatory breach of their contract, but denied defendants' request for specific performance. Defendants appealed the circuit court's denial of their request for specific performance, but that decision was affirmed in an unpublished opinion by the Illinois Appellate Court. Thereafter, plaintiffs brought the instant suit against defendants in the Circuit Court of Will County. Defendants removed the suit to this court on March 25, 2002.

The complaint filed against defendants in the instant case alleges that Kirkwood formed the defendant companies "for the purpose of entering into contracts and agreements to obtain an option to purchase the land owned by the Plaintiffs for the purpose of depriving the Plaintiffs of the use of the land for a long period of time in order to enhance the value of the land to be purchased by the Defendant Kirkwood and to allow Kirkwood to obtain the title to Plaintiffs' property for less than fair consideration." Plaintiffs further allege that, "To secure Plaintiffs' signatures on the contract, the Defendant Kirkwood made numerous false and fraudulent representations, including that she had great experience in developing real estate, that she the skills [sic] and ability to develop a 'mega mall' on the property, and that she had investors and others who were willing to work and cooperate with her in the development of a 'mega mall.'" According to plaintiffs, "the false representations made by Defendant Kirkwood were made in order to induce the Plaintiffs to enter into the contract,

3

were part of a scheme to tie up the Plaintiffs' land and prevent it from being developed and to defraud your Plaintiffs."

Following these allegations, plaintiffs' complaint lists, describes and attaches seven letters sent to them by defendants. Plaintiffs allege that these letters, which span from January 1, 1996, to May 18, 2001, were sent by Kirkwood "in furtherance of her scheme to defraud the Plaintiffs," that she intended plaintiffs to "rely upon the correspondence to their detriment," that they "affect interstate commerce in that the scheme was purportedly a multi-state 'mega mall' affecting business and residence in Illinois, Indiana and Wisconsin," and that they were "false, and intended to cause detriment to the recipients as well as your plaintiffs."

The first letter, written to defendant Kirkwood and an attorney for plaintiffs by an attorney at Shefsky, Froelich, & Devine, Ltd., is dated November 29, 1995. This letter informs the parties that the author will hold the quit claim deeds to plaintiffs' property on behalf of both parties, and will disburse those deeds pursuant to particular terms, which are set forth in the letter. The next letter is dated January 1, 1996, and it informs plaintiffs that Kirkwood is in the process of drafting proposed lease plans to recruit lessees for plaintiffs' property. Kirkwood writes further that banks, motels and car dealers had been contacting her about available space in the proposed shopping center.

The next correspondence referenced in plaintiffs' complaint is a series of letters and facsimiles of letters sent from defendant Kirkwood to James Dausch ("Dausch"), the Vice President of Mills. In the first of these letters, Kirkwood suggests that Mills build a mall on plaintiffs' land in Monee and provides a detailed offer for that deal, including the amount of plaintiffs' land proposed for the deal, the cost of the land per acre, and an additional 100 "free" acres of land that

would be provided to Mills if it agreed to the deal by a certain date. Subsequent letters from defendant Kirkwood to Dausch alter particular terms of the proposed deal and provide further information about plaintiffs' property to encourage Mills' development of the land.

Upon learning that plaintiffs had filed their initial suit in Will County Circuit Court, Kirkwood sent a letter to plaintiff Myrene Quanstrom on May 10, 1997. In the letter, Kirkwood requests that plaintiffs withdraw their suit and "honor" the parties' contract because, despite the dissolution of the Mills deal, Kirkwood continued to work with other potential developers of the plaintiffs' land. She further wrote that "her children's inheritance and her companies' entire assets and energy have been working towards buying the property."

A letter sent by Kirkwood on July 2, 1997, provides that it was her intention to close on the main parcel of plaintiffs' land by July 10, 1997, and that the only problem that had postponed the closing of that deal was an investigation of the alleged Platt Act violation that plaintiffs had previously asserted prohibited the sale. Kirkwood requests in the letter that plaintiffs select a date by which to complete the main parcel closing. Yet another letter from defendant Kirkwood to plaintiffs restates that intention and is dated May 22, 1998.

The last letter listed in plaintiffs' complaint is dated May 18, 2001, and is written by an attorney from Klein, Thorpe and Jenkins on behalf of defendants. This letter, which is addressed to the President and Board of Trustees of the Village of Monee, states that although the author does "not represent Monee Associates, LLC and Eileen Kirkwood in their litigation matters," he was asked to contact the village in relation to "the adoption of Ordinance No. 1136 which repeals the Ordinances authorizing the execution of three annexation agreements, all of which my clients were signatories to." According to the letter's author, Ordinance No. 1136 was adopted with the

erroneous understanding that defendant Kirkwood had no further interest in the contracts for the purchase of plaintiffs' land. Indeed, the author notes, "the validity of the original contract IS STILL IN DISPUTE" in the lawsuit pending in Will County Circuit Court. Having pointed out the Village's alleged error, the author suggests that the "Village President veto Ordinance No. 1136, or that the Village Board take appropriate action to reconsider the adoption of Ordinance No. 1136 and vote against its adoption."

## **DISCUSSION**

Defendants' argument in support of their motion to dismiss is two-fold. First, defendants argue that plaintiffs' suit is time-barred by the applicable four-year statute of limitations for RICO claims. Second, defendants argue that even if it is timely under RICO, the allegations in plaintiffs' suit do not constitute a RICO claim. The court agrees with defendants in both respects.

### *A. The RICO Statute of Limitations*

RICO provides for civil actions seeking damages and attorney's fees by people who are injured in their business or property due to a violation of 18 U.S.C. § 1964(c). In <u>Agency Holding Corp. v. Malley Duff & Associates, Inc.</u>, 483 U.S. 143 (1987), the Supreme Court held that the appropriate statute of limitations to be applied in civil enforcement actions under RICO was four years. This four-year period begins to run on the date that plaintiffs knew or should have known that they were injured. <u>Rotella v. Wood</u>, 528 U.S. 549, 554 (2000).

Defendants claim that plaintiffs' suit is time-barred because they knew or should have known of their alleged RICO injury in 1995, when they entered into the contract with defendants. In support of this argument, defendants point out that plaintiffs' complaint alleges that they were injured by Kirkwood's "false and fraudulent representations," which were made to "induce" plaintiffs to enter

6

into the contract. Thus, defendants argue, as soon as they signed the contract plaintiffs knew or should have known that they had been injured.

But defendants have provided the court with no facts tending to show that plaintiffs knew or should have known of their injury the moment at which it occurred. Indeed, the court has every reason to believe that, as with any sellers of property, plaintiffs signed the contract with defendants believing (or at least hoping) that they were entering into a successful business venture. Thus, the court disagrees with defendants that plaintiffs' RICO clock began ticking when they signed the contract in 1995.

Plaintiffs' contention of when they knew or should have known of their injury is equally untenable, however. Plaintiffs name September 8, 1998 (the date the circuit court entered its order finding plaintiffs' suit to be an anticipatory breach), as the earliest date that plaintiffs knew or should have known they suffered an injury. Plaintiffs' argument in support of this conclusion is as follows:

> Plaintiffs asked the Will County Circuit Court to interpret the contract between themselves and Defendants. On September 8, 1998, the Will County Circuit Court entered its order with respect to Plaintiffs' declaratory judgment action, wherein it refused to interpret the contract and apply facts concerning attempts to close the contract in the fashion the Plaintiff[s] desired. Thus, September 8, 1998 is the *earliest* date as of which Plaintiffs knew or should have known of any injury. Although Plaintiffs do not necessarily contend that their injuries even occurred at that early date, even if the Court found this to be the date of Plaintiffs' injuries, the February 2002 filing of the current matter is clearly within the four-year statute of limitations. Plaintiffs' injuries are continuous; the "injury" giving rise to Plaintiffs' claim is, in fact, a series of injuries, which, by virtue of Defendants' misrepresentations, were not, and are not, identifiable as legal "injuries" until the resolution of the legal claims associated with the contract. Such claims have continued as recently as 2001. . . . The earliest date at which Plaintiffs can be charged with knowing, or when they should have known of their injuries was September 8, 1998. As such, plaintiffs' filing of this action in February 2002 is timely within the RICO statute of limitations.

7

This argument does not make sense. To the extent that plaintiffs are asserting that they did not know or should not have known that they had been injured until the circuit court decided their declaratory judgment action, plaintiffs are confusing knowledge of a legal injury with knowledge of a factual injury. As the Supreme Court explained in Rotella, the RICO statute of limitations clock begins to run when a plaintiff knows or has reason to know of his or her injuries, not when he or she knows or has reason to know that they have a legal claim for that injury under RICO. 528 U.S. at 555-60.[1] Thus, plaintiffs' claim that their alleged RICO injury is "continuous" pending "the resolution of the legal claims associated with the contract," likewise fails.

Finally, plaintiffs' argument that their alleged RICO injury did not occur until after September 8, 1998, directly contradicts the allegations in plaintiffs' complaint. Plaintiffs allege that "Defendant Kirkwood made numerous false and fraudulent representations," that these representations were made "in order to induce the Plaintiffs to enter into the contract," and that all of this was "part of a scheme to tie up the Plaintiffs' land and prevent it from being developed and to defraud your Plaintiffs." The only plausible interpretation of these allegations is that plaintiffs were injured when they entered into the contract with defendants. Once the parties signed the contract, defendants had the right to wait until the very last day set forth therein to purchase plaintiffs' property.

Finding no merit to either party's claim as to when plaintiffs knew or should have known that they suffered their alleged RICO injury, the court concludes that the appropriate date at which

---

[1] Even if plaintiffs' ignorance of their legal injury under RICO could delay the running of the statute of limitations in the instant case, such a claim would not justify starting their limitations clock on September 8, 1998. There is no reason to believe that plaintiffs were enlightened as to any legal basis for their alleged RICO injury on that day; if anything, the circuit court's ruling indicated that plaintiffs had no basis to claim that they had suffered an injury.

RICO's four-year statute of limitations began running in the instant case was, at the latest, May 10 1997, the date on which plaintiffs filed suit for a declaratory judgment in state court.[2] By filing that suit, plaintiffs demonstrated that they knew or should have known of the RICO injury they allege in the instant case. As explained by the Illinois Appellate Court, in plaintiffs' claim for a declaratory judgment they asserted that defendants had been or would be unable to live up to their responsibilities under the contract, which plaintiffs sought to be declared "null and void." Plaintiffs thus knew or should have known at the time they filed that suit that they had been injured by entering into the contract with defendants, which deprived them of the use or right to sell their property. In the instant case, plaintiffs allege that they were fraudulently induced to enter into the contract with defendants. In both cases, therefore, the alleged injury to plaintiffs is the same: the deprivation of plaintiffs' ability to use or sell the property "for a long period of time." Thus, the court concludes that plaintiffs' RICO clock began ticking no later than May 10, 1997, and expired on May 10, 2001. Because plaintiffs did not file the instant suit until February 21, 2002, it is time-barred.

### B. Failure to State a RICO Claim

Even if plaintiffs' suit were not found to be time-barred, the court would nonetheless conclude that plaintiffs' allegations fail to state a claim under RICO. To state a claim for a violation of RICO, plaintiffs must allege a cognizable injury to their business or property resulting from (1) conduct; (2) of an enterprise; (3) through a pattern; (4) of racketeering activity. Sedima S.P.R.L. v.

---

[2] The documents submitted by the parties are unclear as to the exact date on which the state court suit was filed. That date must have been on or prior to May 10, 1997, however, because on that date defendants sent plaintiffs a letter expressing surprise about the filing of the state court complaint and requested that they withdraw the suit.

9

Imrex Co., Inc., 473 U.S. 479, 496 (1985). In the instant case, plaintiffs have failed sufficiently to allege a pattern of racketeering activity.

By now it is well established that when Congress enacted RICO, it was concerned with long-term criminal conduct. H.J., Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 242 (1989); Williams Elecs. Games, Inc. v. Barry, 42 F. Supp. 2d 785, 795 (N.D. Ill. 1999). Accordingly, the Supreme Court has cautioned that "predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement." H.J., Inc., 492 U.S. at 242; see also Miller v. Gain Financial, Inc., 995 F.2d 706 (7th Cir. 1993). This "continuity plus relationship" test "is both a closed-and-open-ended concept, in that it refers 'either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition.'" Corley v. Rosewood Care Ctr., Inc., 142 F.3d 1041, 1048 (7th Cir. 1998) (quoting H.J., Inc., 492 U.S. at 241). Plaintiffs' complaint does not met the requirements of the closed-ended or the open-ended types of continuity required under Corley.

To show open-ended continuity, plaintiffs must demonstrate: (1) a "specific threat of repetition"; (2) that the "predicate acts or offenses are part of an ongoing entity's regular way of doing business"; or (3) that defendants operate a "long term association that exists for criminal purposes." Midwest Grinding Co., Inc. v. Spitz, 976 F.2d 1016, 1023 (7th Cir. 1992) (quoting H.J., Inc., 492 U.S. at 242-43); see also Vicom, Inc., 20 F.3d 782 (7th Cir. 1994). As for closed-ended continuity, plaintiffs must "prove a series of related predicates extending over a substantial period of time." See H.J. Inc., 492 U.S. at 242. Following the Supreme Court's lead, the Seventh Circuit has held that duration is "the single most important aspect of the closed-ended continuity analysis." Vicom, Inc., 20 F.3d at 781. Indeed, a scheme that allegedly lasted nine months was held to be too

short in duration in Midwest, 976 F.2d at 1024, and another allegedly lasting seven to eight months was held to be "precisely the type of short-term, closed-ended fraud that, subsequent to H.J. Inc., this circuit consistently has held does not constitute a pattern."

Here, plaintiffs allege that defendant Kirkwood formed the defendant companies "for the purpose of entering into contracts and agreements to obtain an option to purchase the land owned by the Plaintiffs for the purpose of depriving the Plaintiffs of the use of the land for a long period of time in order to enhance the value of the land to be purchased by the Defendant Kirkwood and to allow Kirkwood to obtain the title to Plaintiff's property for less than fair consideration." This allegation negates a finding of open-ended continuity because it indicates a short-term association aimed at achieving a one-time goal, with no specific threat of repetition. Similarly, plaintiffs allege that the goal of defendants' supposed scheme was "to tie up the Plaintiffs' land and prevent it from being developed and to defraud your Plaintiffs." As explained above, this alleged goal was achieved when plaintiffs signed the land sale contract back in 1995. Thus, according to plaintiffs' complaint, the duration of defendants' alleged scheme was short-lived.

Plaintiffs attempt to avoid this conclusion by arguing that defendants' scheme spanned at least five years, as indicated by the correspondence defendants sent to plaintiffs from 1995 to 2001. According to plaintiffs, each of these letters constitutes mail fraud, which is a predicate act under RICO. Although creative, the court is not moved by plaintiffs' attempt to draw out what has been alleged to be a short-lived scheme of defendants by pointing to letters defendants sent long after the goal of the alleged scheme had been achieved.

Plaintiffs' suit is authorized by 18 U.S.C. §1964(c), which states in part: "Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor

11

in any appropriate United States district court." (Emphasis added.) In turn, 18 U.S.C. §1962 makes it unlawful for "any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." Thus, when read together, the two sections of the RICO statute applicable to the instant case allow a person to sue under RICO only when he or she has suffered an injury by reason of the conduct of an enterprise through a pattern of racketeering activity.

As discussed above, in the instant case plaintiffs suffered their alleged injury when they signed the land sale contract with defendants back in 1995. Each of the letters referenced in plaintiffs' complaint was sent to them after they entered into the land sale contract with defendants. Thus, plaintiffs have not alleged that they suffered an injury by reason of the letters listed in plaintiffs' complaint and, accordingly, the court cannot consider that correspondence as part of defendants' alleged racketeering activity.

Upon close examination, the only allegations in plaintiffs' complaint that address defendants' conduct prior to plaintiffs' injury are their claims that she formed the defendant companies for the purpose of entering into the contract with plaintiffs, and that she made numerous false and fraudulent representations to induce plaintiffs into signing the contract. Plaintiffs' complaint is silent as to how long it took defendants to accomplish these feats, and how that conduct constitutes a violation of §1962. Thus, because plaintiffs have failed to allege that defendants engaged in racketeering activity prior to signing the contract, no reasonable jury could find that plaintiffs have been injured by reason of a violation of §1962 by defendants. Accordingly, defendants' motion to dismiss for failure to state a claim is granted.

## CONCLUSION

The instant case is best characterized as a real estate deal gone sour. Based on the facts alleged by both parties, it is clear that plaintiffs regret entering into the land sale contract with defendants. Even so, plaintiffs have neither timely nor properly alleged that defendants' conduct in the events surrounding plaintiffs' signing of that contract amount to a RICO claim. For these reasons, defendants' motion to dismiss is granted.

**ENTER:** **July 29, 2002**

　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　Robert W. Gettleman
　　　　　　　　　　　　　　　　　　　　　United States District Judge